1

2

3

4

5

6

7

8          **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   J & J SPORTS PRODUCTIONS, Inc.,              CASE NO. 09cv1381 WQH (CAB)

12                              Plaintiff,        **ORDER**
          vs.
13   EMILIA CARVAJAL PEREZ, et al.,

14                              Defendants.

15   HAYES, Judge:

16         The matters before the Court are the Motion for Default Judgment (Doc. # 10) filed by

17   Plaintiff J & J Sports Productions Inc. ("J & J Sports") and the Amended Motion to Set Aside

18   Default (Doc. # 21) filed by Defendants Emilia Carvajal Perez and Jose Alfredo Perez.

19                              **BACKGROUND**

20         On June 25, 2009, J& J Sports initiated this action by filing a complaint.  (Doc. # 1).

21   The complaint alleges Defendants own a restaurant called Mariscos Ensenada located in

22   Oceanside, California.  *Id.* at 3.  The complaint alleges J & J Sports held exclusive nationwide

23   commercial distribution rights to "Lethal Combination: Manny Pacquiao v. David Diaz WBC

24   Lightweight Championship Fight Program" ("the Program") broadcast on June 28, 2008.  *Id.*

25   The complaint alleges that Defendants' restaurant  unlawfully intercepted the broadcast and

26   showed the Program to customers.  *Id.* at 4.  The complaint alleges the unauthorized screening

27   of the Program was intentional and done for commercial advantage and financial gain.  *Id.*  The

28   complaint alleges claims for: (1) violation of 47 U.S.C. § 605; (2) violation of 47 U.S.C. § 553;

(3) conversion; and (4) violation of California Business & Professions Code § 17200, et seq. *Id.* at 4-8. The complaint seeks injunctive relief, $170,000 in statutory damages, exemplatory damages, punitive damages, restitution, compensatory damages, attorneys' fees, and costs. *Id.* at 9-10.

On June 25, 2009, the Clerk of the Court issued a summons to Defendants. (Doc. # 2). On July 21, 2009, the summons was returned executed. (Docs. # 4, 5). An answer was due by August 3, 2009. *Id.* No answer was filed. On August 4, 2009, J & J Sports requested entry of Clerk Default against Jose Perez. (Doc. # 6). On August 5, 2009, the Clerk of the Court entered default against Jose Perez. (Doc. # 7). On August 18, 2009, J & J Sports requested entry of Clerk Default against Emilia Perez. (Doc. # 8). On August 19, 2009, the Clerk of the Court entered Default against Emilia Perez. (Doc. # 9). On October 8, 2009, J & J Sports moved for default judgment. (Doc. # 10).

On November 6, 2009, Defendants filed a Motion to Set Aside Clerk's Default. (Doc. # 20). On November 16, 2009, Defendants filed their Amended Motion to Set Aside Clerk's Default. (Doc. # 21). On December 4, 2009, J & J Sports filed an amended proof of service and a second amended proof of service. (Docs. 22, 23).

## ANALYSIS

### I. Amended Motion to Set Aside Clerk's Default

#### A. Contentions of the Parties

Defendants contend that they were not aware of the pending lawsuit until mid-October of 2009, when they immediately sought legal counsel. (Doc. # 21-1 at 2). Defendants contend that the service of process was defective and that they were not actually served. *Id.* Defendants contend that the proof of service as to Jose Perez states he was served at the restaurant on Monday July 13, 2009, at 10:35 AM, but he only works from about 7 AM to 8 AM on Mondays because Defendants are semi-retired. *Id.* Defendants contend the proof of service as to Emilia Perez is internally inconsistent as to where and how she was served, casting doubt on its validity. *Id.* Defendants contend that they also failed to receive a mailed copy of the lawsuit due to negligent mail handling at the restaurant. *Id.*

09cv1381 WQH (CAB)

Defendants contend that they have a meritorious defense to the allegations of the complaint. *Id.* at 8. Defendants contend that they subscribe to a Mexican satellite television network called "Sky TV Mexico," which broadcasts Mexican television programs in the United States. *Id.* Defendants contend that the Program was broadcast on Sky TV Mexico and shown in their restaurant by simply turning on the television and selecting that channel. *Id.* Defendants contend that there will be no prejudice to J & J Sports if the default is set aside. *Id.* at 9. Defendants attached the sworn declarations of Emilia Perez, Jose Perez, and their attorney, Sergio Feria, in support of their motion as well as their proposed answer to the complaint. (Docs. # 21-2, 21-3, 21-4, and 21-5).

J & J Sports contends that Defendants have failed to show good cause for setting aside the Clerk's Default. (Doc. # 24 at 3-4). J & J Sports contends Defendants' statements do not show that they were not properly served and that at most, they are able to show "technical discrepancies" in the proof of service as to Emilia Perez. *Id.* at 5. J & J Sports contends that Defendants defense to the allegations in the complaint is not meritorious because even if Defendants did receive the broadcast from Sky TV Mexico, showing it in the restaurant would violate J &J Sports's licensing rights. *Id.* at 7. J &J Sports further contends that it would be prejudiced if the default were set aside because "Defendants are intimately intertwined" resulting in "a possibility of fraud or collusion" and because "Defendants admittedly to having [sic] little to do with the day to day operations of the business there is a likelihood of loss of evidence." *Id.* at 9. Finally, J & J sports contends that "even if Defendants were not properly served, Defendants have not presented a meritorious defense to liability in this case and setting aside the default would be a waste of judicial time and resources."

### B.    Applicable Law

Pursuant to Federal Rule of Civil Procedure 55(c), "[t]he court may set aside an entry of default for good cause." A party moving to set aside a clerk's default has a lower burden than a party moving to set aside default judgment. "Any of the reasons sufficient to justify the vacation of a default judgment under Rule 60(b) normally will justify relief from a default entry and in various situations a default entry may be set aside for reasons that would not be

1   enough to open a default judgment." Charles Alan Wright, Arthur R. Miller, and Mary Kay

2   Kane, 10A Federal Practice and Procedure § 2696 (3d ed. 1998).  Pursuant to Federal Rule of

3   Civil Procedure 60(b)(1), a court may set aside a judgment "for the following reasons: mistake,

4   inadvertence, surprise, or excusable neglect."  The grounds listed in Rule 60(b) "are liberally

5   interpreted when used on a motion for relief from an entry of default." *Hawaii Carpenters'*

6   *Trust Funds v. Stone*, 749 F.2d 508, 513 (9th Cir. 1986).  "The different treatment of default

7   entry and judgment by Rule 55(c) frees a court considering a motion to set aside a default entry

8   from the restraint of Rule 60(b) and entrusts determination to the discretion of the court." *Id.*

9   A district court is "free to deny the motion 'if any of the three factors'" identified by the Ninth

10  Circuit in *American Association of Naturopathic Physicians v. Hayhurst* favor denial:  "(1)

11  whether [Defendants]  engaged in culpable conduct that led to the default; (2) whether

12  [Defendants] had a meritorious defense; or (3) whether reopening the default judgment would

13  prejudice [Plaintiff.]" *Franchise Holding II, LLC v. Huntington Rest.'s Group*, 375 F.3d 922,

14  926 (9th Cir. 2004) (*citing American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d

15  1104, 1109 (9th Cir. 2000)).

16      **C.      Ruling of the Court**

17          Defendants have both sworn that they were not served and that they did not receive

18  notice of the lawsuit until mid-October of 2009.  (Docs. # 21-2, 21-3).  The defects in the proof

19  of service submitted as to Emilia Perez support her assertion that she never received service.

20  (Docs. # 5, 22, 23).  The three proofs of service filed in this case are internally contradictory

21  and inconsistent with each other.   The original proof of service states that Emilia Perez was

22  served at 1405 South El Camio Real, Suite 108B, Oceanside, California 92054, the address for

23  the restaurant.  (Doc. # 5 at 1).  The proof of service also states that the server was unable to

24  contact Emilia Perez at her residence because she was "not home."  *Id.* at 2.  The proof of

25  service states service was attempted four times at the residence before "substituted service"

26  was performed at the residence.  The manner of service is "substitute service" via serving a

27  "John Doe" co-occupant who refused to give his name.  *Id.* at 1.   The co-occupant of the

28  residence is described as approximately 30 years old, weighs 180 pounds, and is Hispanic. *Id.*

at 1.  However, the same form states "Residence address was not known at the time of service." *Id.* at 2.  The "Amended" proof of service filed December 4, 2009, states that service was accomplished at Emilia Perez's residence by serving the same "John Doe" who is listed as a "co-occupant." (Doc. # 22 at 1-2).  This proof of service lists the restaurant's address as the residence address and states "Business address was not known at the time of service." *Id.* at 2.  Finally, the "Second Amended" proof of service filed December 4, 2009, states that Emilia Perez was served at her business address, that the residential address was not known, and lists the same "John Doe" not as a "co-occupant" but as the "Person in charge." (Doc. # 23).  Defendants have come forward with credible evidence that they were unaware of the lawsuit.  The Court finds that Defendants did not engage in any "culpable conduct" that resulted in their default.

Defendants stated that they subscribe to a satellite television service from Mexico which broadcast the Program and have provided bills from that service to support their claim.  (Docs. 21-2, Ex. 1, 21-3, Ex. 1).  Such evidence is relevant to establish whether showing the Program was unauthorized pursuant to 47 U.S.C. § 605 and 47 U.S.C. § 553; whether it was "unlawful, unfair or fraudulent" pursuant to California Business & Professional Code § 17200; and whether it was "wrongful" under California tort law on conversions.  Even if J & J Sports is correct that purchasing a satellite broadcast of the Program from another provider within the United States would still be a violation of 47 U.S.C. § 605 and 47 U.S.C. § 553, this evidence would be relevant to damages.  A  "willful" violation of 47 U.S.C. § 605 for "the purposes of direct or indirect commercial advantage" allows the court to increase the damage award by up to $100,000 over the damages for an unintentional violation.  If a defendant who violates 47 U.S.C. § 553 can establish that he was "not aware and had no reason to be aware that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages, whether actual or statutory,  to a sum of not less than $100."  Defendants' evidence would help to establish that if there was a violation, it was not willful, and that they had no reason to be aware of any statutory violation.  The Court therefore finds that Defendants have a meritorious defense to the allegations of the complaint.

09cv1381 WQH (CAB)

1  J & J Sports contends it has expended time and money in pursuing its claim and there

2  will be financial loss if the default is set aside.  *Id.*  The expense of prosecuting a lawsuit is

3  not the sort of unfair prejudice that the rule from *American Association of Naturopathic*

4  *Physicians v. Hayhurst* is designed to protect against.  J & J Sports would have had to bear the

5  expense of proceeding with the lawsuit if Defendants had timely filed an answer.  Defendants

6  filed their motion approximately three months after the clerk's defaults were entered and less

7  than a month after J & J Sports moved for default judgment.  *See* Docs. # 9, 10, 12.  There is

8  no evidence that this three-month delay will make it any more difficult for J & J Sports to

9  prove its case. Defendants have therefore shown that J & J Sports will not be subject to

10  prejudice if the default is set aside. The Court finds that Defendants have established good

11  cause to set aside the entry of default against them.

12  **II.  Motion for Default Judgment**

13  J & J Sports contends that it is entitled to default judgment because its complaint pleads

14  all of the elements of the alleged claims and Defendants failed to file an answer or other

15  responsive pleading on the properly served complaint. (Doc. # 10-1 at 2). Because the Court

16  has granted Defendants' motion to set aside the entry of default, J & J Sports's motion is

17  moot.

18  **CONCLUSION**

19  IT IS HEREBY ORDERED that Defendants' Amended Motion to Set Aside Default

20  (Doc. # 21) is **GRANTED**.  Defendants may file the answer attached to their motion.  IT IS

21  FURTHER ORDERED that Plaintiff's Motion for Default Judgment (Doc. # 10) is **DENIED**

22  **AS MOOT**.

23  DATED:  January 20, 2010

24  **WILLIAM Q. HAYES**
United States District Judge

25

26

27

28

- 6 -                                                              09cv1381 WQH (CAB)